# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCTAVIO JAMAL HENDERSON,<br><br>Plaintiff,<br><br>v.<br><br>KEITH SCHLECCT, et al.,<br><br>Defendants. | Case No. 21-cv-01771-DAD-BAK<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE A SECOND AMENDED COMPLAINT<br><br>(ECF No. 11)<br><br>THIRTY DAY DEADLINE |

Octavio Jamal Henderson ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. On February 11, 2022, the Court screened Plaintiff's complaint and granted Plaintiff thirty days to file a first amended complaint (ECF No. 10.) Currently before the Court is Plaintiff's first amended complaint, filed on March 7, 2022. (ECF No. 11.)

**I.**

**SCREENING REQUIREMENT**

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners);

Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim). The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

The caption page of the complaint identifies the Bakersfield Police Department as the only Defendant. (Compl. 1,[1] ECF No. 1.) In the section where Plaintiff is to list the Defendants, the police department is not named, but rather Plaintiff names three police officers as Defendants: (1) Keith Schlecht ("Schlecht"), identified as a detective with the Bakersfield Police Department; (2) Eby Bailey ("Bailey"), identified as a police officer with the Bakersfield Police Department; and (3) Cory Blanchard ("Blanchard"), and identified as a police officer with the Bakersfield Police Department. (Compl. 3.)

Where the complaint form asks the Plaintiff to identify the civil right that has been violated, Plaintiff only states to see attached pages. The Court shall reproduce the Plaintiff's complaint in its entirety:

> My name is Octavio Henderson. I am not incarcerated; I am currently on probation and have been since 01/30/2020. On June 19, 2019 I was involved in an incident where another car was for some reason trying to run me off the road and slam on his brakes in front of me whenever I tried to go around him to avoid an accident. The passengers in the car with me, Cynthia Garland and Christy Raguini called 911 to let them know we were following him to get his license plate number because he was driving recklessly. The dispatcher, who I later found out, was a police officer said that he didn't understand why we were following him since they weren't going to do anything. We hung up and tried again to go about our business and the Honda Civic again began engaging in reckless behavior.
>
> I finally pulled over and got out of the car in a medical center parking lot. The driver of the Honda was in the same parking lot and he attempted to leave the parking lot, at which time he hit me and ran me over. The passengers in my car called 911 for medical assistance this time. I am not sure what the name of the civil rights that were violated, however, the only time I was questioned about the incident was when I was in the hospital bed right after being hit and run over by the car and receiving a head injury. I don't remember what questions were asked or how I answered. I spoke to a detective one time throughout the entire ordeal and I was threatened with arrest. When we finally received a copy of the police report, we found out that they had asked the person who hit me if he wanted to press charges against me for jumping on his vehicle and damaging it. He declined at first but called the police officers a few hours later and stated that they had changed their minds and they wanted to press charges. I did not contact defense attorneys because I did not believe that I needed [to] because I was

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

the one that was hit by the car.

In August of 2019 we filed a complaint with internal affairs department because I did not know what was being done with the investigation. I and one of my passengers, Cynthia Garland, went to the police department to speak to the detective or anyone involved in the investigation and we were left sitting in the lobby for long periods of time and I was never able to speak to anybody. On December 5, 2019 a bounty officer showed up at my home with a $67,000.00 warrant for my arrest for felony vandalism, child endangerment and reckless driving. I again was able to receive information to show that even though the detective did have correct information, he turned in paperwork with an incorrect social security number to obtain the excessive bail amount. Throughout the entire "investigation" I did not receive any other form of communication from the police department, not a moving violation of any kind, especially not for reckless driving, I never received a subpoena or a letter or a phone call to come to the police department for questioning. I was not aware that I was under investigation.

Supporting Facts: On June 19, 2019 Officer Cory Blanchard and Eby Bailey arrived at the incident, a possible assault with a deadly weapon, possibly a vehicle, and witnessed the emergency crews put me in an ambulance and take me to the hospital, unable to answer simple questions and unable to move my legs. One of those two officers went to the hospital behind the ambulance to question me. The other stayed behind with another officer to talk to the driver of the Honda that ran me over. The driver of the vehicle that hit me said that he ran me over because he was scared because I jumped on his vehicle to keep him from leaving. The officers asked the driver of the Honda if he wanted to press charges against me for damaging his vehicle. I was just hit by a car and suffered a head injury so I do not remember what questions were asked or how I answered.

A few days later, I had not received any phone calls or any type of communication regarding the incident so I contacted the police department to ask about the progress of the investigation and why the person who ran me over had not been arrested for assault. A personal injury lawyer was able to give me the name of the detective in charge of the investigation so we did ask to speak to him and left him a message. He called me back and said that he was on his days off so he had not seen the case yet. He assured me that once he got back in the office he would check into it. I believe I may have asked him again why the person who ran me over was not arrested and he became angry and he told me I needed to watch myself because I was the one who could end up being arrested. That was the only time we spoke. I did not hear anything else from him, so in August of 2019 we formally went to internal affairs to file a complaint. In September of 2019, a warrant was requested for my arrest, with an incorrect social security number. I was not aware of the warrant until December 5, 2019 when a bounty officer showed up to my house with the arrest warrant.

> V. Relief:  I believe that I am entitled to be fully compensated for the funds that were used to bail me out of jail, the money that I had to pay for anger management classes, court fees and all fees associated with probation.  All charges and records of me being charged should be removed from my record and I and my family, including my witnesses deserve a written and a verbal apology from the Bakersfield Police department.  I also believe that I am entitled to damages for physical and emotional damages.  I am still having nightmares and still fear that any encounter with the police may lead to arrest simply because of this situation.

(Compl. 4-5.)

For the reasons discussed below, Plaintiff has failed to state a claim for a violation of his federal rights.  Plaintiff shall be provided the opportunity to file an amended complaint to attempt to correct the deficiencies at issue.

## III.

## DISCUSSION

### A. Review of Plaintiff's Factual Allegations as Applicable to Below Legal Standards

Plaintiff does not specifically reference a civil right that he alleges was violated, rather stating that he is "not sure what the name of the civil rights were violated," before proceeding to generally describe a course of events following the incident on June 19, 2019.  By Plaintiff's own account, the incident appears to be a case of road rage between two cars, with Plaintiff alleging that the other car was trying to run him off the road and slam on their brakes in front of him whenever "he tried to go around him to avoid an accident."  It is unclear why Plaintiff repeatedly was trying to pass or go around someone driving recklessly rather than taking an alternate route or slowing down to allow the vehicle to get ahead of the area where Plaintiff's car was driving.  Plaintiff then admittedly followed the vehicle in question despite what appear to be either a statement from the dispatcher expressing confusion as to why Plaintiff was following the car in light of the dispatcher informing the Plaintiff that the police were not coming, or some sort of instructions from the dispatcher informing the Plaintiff there was no reason to follow the car.

Plaintiff alleges he nonetheless continued to follow the car as it continued to engage in reckless behavior.  Plaintiff vaguely states he pulled over in a parking lot, and the driver of the

5

other car was in the same parking lot. Plaintiff does not describe which vehicle entered the parking lot first, however, from Plaintiff's repeated statements that he was following the car, it appears he followed the vehicle into a medical center parking lot. Plaintiff then only states that the vehicle attempted to leave the parking lot, and Plaintiff was struck by the vehicle. Plaintiff does not explain why he left his vehicle, if he was approaching the other vehicle, or if he was trying to prevent the other vehicle from leaving the parking lot by standing in front of it and blocking its exit, after apparently following the vehicle and repeatedly trying to pass it while the other car was allegedly driving recklessly and purposely slamming on its brakes.

Plaintiff then generally describes dissatisfaction with the investigation process, however, admits that he does not remember what questions were asked on the night of the incident, nor how he answered. On the other hand, Plaintiff states the driver of the other vehicle told the officers that he hit Plaintiff with the vehicle because that person was scared because Plaintiff jumped on the vehicle to keep the other vehicle from leaving. It appears Plaintiff was charged with endangerment of a child and thus there may have been a child in the vehicle of the other person.

Plaintiff avers that the $67,000 arrest warrant executed by a bounty officer constituted excessive bail. Plaintiff states he is not incarcerated, and currently on a term of probation that began on January 30, 2020.

### B.     Federal Rule of Civil Procedure 8

Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal quotation marks omitted). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). This is because, while factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556-57; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Therefore, Plaintiff must set forth "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678  (citations and internal quotation marks omitted).

As currently pled, Plaintiff's complaint does not contain enough factual details to permit the Court to draw the reasonable inference that any of the Defendants are liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.  Plaintiff's allegations are vague and conclusory statements that his rights were violated because the police officers who responded to an incident allegedly believed the other person's story over Plaintiff's through a police investigation.  These conclusory statements, insufficiently supported by factual details, do not suffice to state any claim against any of the Defendants.

For these reasons, Plaintiff's complaint fails to comply with Rule 8's pleading standard. If Plaintiff chooses to file an amended complaint, he should consider the legal standards the Court provides in the following sections.

**C.     Habeas Relief**

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for writ of habeas corpus, 28 U.S.C. § 2254, and a complaint under . . . 42 U.S.C. § 1983." Muhammad v. Close, 540 U.S. 749, 750 (2004) (per curiam).  "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." Id. (internal citation omitted).  It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief.  Wilkinson v. Dotson, 544 U.S. 74, 78 (2005).  Often referred to as the favorable termination rule or the Heck bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Wilkinson, 544

U.S. at 81; Heck v. Humphrey, 512 U.S. 477, 482, 486-487 (1994); Edwards v. Balisok, 520 U.S. 641, 644 (1997).

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that in order to recover damages for alleged "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486. Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson, 544 U.S. at 81-82.

Plaintiff's complaint appears to allege he is on probation stemming from the charges related to the incident. If Plaintiff has not had his sentence of probation declared invalid, or if Plaintiff is challenging any part of his sentence that has not been declared invalid, the proper avenue to seek relief is by way of habeas corpus petition filed pursuant to 28 U.S.C. § 2254. See Chico Scrap Metal, Inc. v. Robinson, 560 F. App'x 650 (9th Cir. 2014) ("In addition, *Heck* bars the claims because Plaintiffs were sentenced to compliance with the challenged cleanup orders as a condition of their probation in the criminal case, as specifically directed by the state court in its criminal judgment. . . . Indeed, many of Plaintiffs' disputes are the subject of state court litigation seeking to revoke their probation in the criminal case, further demonstrating the *Heck* bar."); Maciel v. Taylor, No. CV 11-3599-DMG (RNB), 2013 WL 12474062, at *7 (C.D. Cal. Jan. 31, 2013) ("The favorable termination rule of Heck also applies to claims implicating the validity of a parole or probation revocation.") (collecting cases), report and recommendation adopted, No. CV 11-3599-AG (RNB), 2013 WL 12474074 (C.D. Cal. Sept. 4, 2013); Travis v. Monnier, No. 2:19-CV-02133-TLN-AC, 2021 WL 2042617, at *4 (E.D. Cal. May 21, 2021) ("If Plaintiff's § 1983 claims were successful, it would necessarily call into

question the validity of the Placer County Superior Court's order granting the First Amended Petition for Revocation of Probation.").

Accordingly, to the extent Plaintiff wishes to challenge his sentence which has not been declared invalid by the state court, he must file a habeas corpus petition.

### D. Claims Relating to the Warrant, Arrest, and Bail

The Fourth Amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV.

Warrantless searches would violate the Fourth Amendment unless the search falls within an exception to the Fourth Amendment's warrant requirement. See United States v. Ojeda, 276 F.3d 486, 488 (9th Cir. 2002) (citing Katz v. United States, 389 U.S. 347, 357 (1967)). "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was made without probable cause or other justification." Dubner v. City & Cty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007). "While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, [m]ere suspicion, common rumor, or even strong reason to suspect are not enough." Id. (internal quotations and citation omitted) (alteration in original).

Plaintiff has not provided facts to support a claim of unlawful search or unlawful arrest against any Defendant. First, Plaintiff would fail to state a claim for unlawful arrest because he specifically states he was arrested by a bounty officer, not named as a Defendant, pursuant to a warrant. "The Fourth Amendment requires law enforcement officers to have probable cause to make an arrest if they do not have an arrest warrant." Braden v. Los Angeles Police Dep't, No.

9

CV 16-7633 JVS(JC), 2017 WL 78467, at *3 (C.D. Cal. Jan. 9, 2017) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)); see also Blankenhorn v. City of Orange, 485 F.3d 463, 476 (9th Cir. 2007) (Stating it was "clearly established long ago that an officer may not conduct a warrantless arrest absent probable cause.").

While Plaintiff did not directly name a judge in the complaint, to the extent Plaintiff alleges the warrant was not based on probable cause, or was improperly issued because of an incorrect social security number,[2] Plaintiff is advised that judges are immune from liability under § 1983 when they are functioning in their official capacities under proper jurisdiction. See Imbler v. Pactman, 424 U.S. 409, 427 (1976); see also Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 922 (9th Cir.2004) ("Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacities"); Ashelman v. Pope, 793 F.2d 1072, 1075-77 (9th Cir.1986) (noting that judges are generally immune from § 1983 claims except when acting in "clear absence of all jurisdiction . . . or performs an act that is not 'judicial' in nature," and prosecutors are generally immune unless acting without "authority") (internal citations omitted); Walters v. Mason, No. 215CV0822KJMCMKP, 2017 WL 6344319, at *2 (E.D. Cal. Dec. 12, 2017) (same); Forte v. Merced Cty., No. 1:15-CV-0147 KJM-BAM, 2016 WL 159217, at *12–13 (E.D. Cal. Jan. 13, 2016) ("prosecutorial immunity protects eligible government officials when they are acting pursuant to their official role as advocate for the state"), report and recommendation adopted, No. 1:15-CV-0147-KJM-BAM, 2016 WL 739798 (E.D. Cal. Feb. 25, 2016); Torres v. Saba, No. 16-CV-06607-SI, 2017 WL 86020, at *3–4 (N.D. Cal. Jan. 10, 2017). Where a prosecutor acts within his authority " 'in initiating a prosecution and in presenting the state's case,' absolute immunity applies." Ashelman, 793 F.2d at 1076 (quoting Imbler, 424 U.S. at 431). This immunity extends to actions during both the pre-trial and posttrial phases of a case. See Demery v. Kupperman, 735 F.2d 1139, 1144 (9th Cir. 1984).

Individuals have a constitutional due process right "not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."

---

[2] While Plaintiff claims the social security number was off by one number, Plaintiff does not claim that he was not meant or understood to be the proper subject or target of the warrant for the alleged crime, despite his claims that the investigation was improper or biased.

Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc).  To establish such a due process violation, a plaintiff must, at a minimum, allege either: (1) that government officials continued their investigation "despite the fact that they knew or should have known that [Plaintiff] was innocent;" or (2) "used investigative techniques that were so coercive and abusive that [they] knew or should have known those techniques would yield false information." Cunningham v. Perez, 345 F.3d 802, 811 (9th Cir. 2003) (quoting Devereaux, 263 F.3d at 1076).

Other than generally stating that police officers believed another witness over Plaintiff when investigating an incident, Plaintiff fails to indicate in any specific detail how any officer mishandled any witness, or any specific evidence in a manner that demonstrates intentional falsification of any record or evidence.  Plaintiff's bare conclusory allegations are not sufficient to establish a claim, and do not satisfy the requirements of Federal Rule of Civil Procedure 8 as the Court found above.

The Eighth Amendment's "Excessive Bail Clause prevents the imposition of bail conditions that are excessive in light of valid interests the state seeks to protect by offering bail." Galen v. Cnty. of Los Angeles, 477 F.3d 652, 660 (9th Cir. 2007) (citing United States v. Salerno, 481 U.S. 739, 754 (1987)).  Both the Supreme Court and the Ninth Circuit have assumed, but never decided, that the Clause is incorporated against the states.  Id. at 659 ("Neither the Supreme Court nor we have held that the Clause is incorporated against the States. . . . We follow the Supreme Court in "assum[ing]" without deciding that the Clause is incorporated against the States.").  Bail is considered excessive if set at a figure higher than an amount reasonably calculated to achieve the government's valid interests.  Id. at 660 (citing Salerno, 481 U.S. at 754; Stack v. Boyle, 342 U.S. 1, 3 (1951)).  To prevail on a claim under § 1983, a plaintiff must show that the putative governmental interest is invalid or that "bail was excessive in light of the purpose for which it was set."  Id. at 661.  Whether the amount is beyond the plaintiff's means is irrelevant.  Id. at 662.  In addition, the plaintiff must demonstrate that the defendants were the "actual and proximate cause of his bail enhancement."  Id. at 663.

Here, there is no indication that the named Defendants, the police department and the officers, had any role in an enhancement of any bail amount, nor how they would.  See Williams

v. Clark, No. 214CV00414APGPAL, 2015 WL 6005141, at *6 (D. Nev. Oct. 14, 2015) ("Plaintiff failed to state a claim because: (1) the LVMPD Officer did not set his bail; (2) Plaintiff has not alleged that his bail was enhanced for an improper purpose or that it was excessive in light of the reason it was set; and (3) Plaintiff provided no information about the criminal charges filed against him, his criminal history, if any, or any of the other relevant factors that were considered in setting his bail."). Further, while Plaintiff has not named a judge or judicial officer, even if he had, they are generally immune from such suits, as it "is generally well established that 'granting bail and fixing its amount are judicial or quasi-judicial functions.' " Hill v. Ponner, No. 118CV01471DADSKO, 2019 WL 142280, at *3 (E.D. Cal. Jan. 9, 2019) (quoting Valley Bail Bonds v. Budeski, No. CV–14–24–BLG–SPW–CSO, 2014 WL 3732632, at *5 (D. Mont. July 25, 2014); In re Application of Floyd, 413 F.Supp. 574, 575 (D. Nev. 1976)) (citing Pattillo v. White, 890 F.2d 420 at *1 (9th Cir. 1989) (unpub.) (affirming dismissal of § 1983 claims against judge for decisions made during bail proceedings on grounds of absolute judicial immunity)).

Accordingly Plaintiff has not stated a claim for a violation of the Fourth or Eighth Amendments.

**E.    Section 1983, Supervisory Liability, and Municipal Liability**

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived her of rights secured by the Constitution or federal law. Long, 442 F.3d at 1185 (9th Cir. 2006). There is no *respondeat superior* liability under section 1983, and therefore, each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

In other words, to the extent Plaintiff is attempting to make a claim against an officer that

12

was not personally involved but was only acting as a supervisor over an officer, Plaintiff cannot state a claim unless they were personally and directly involved in the violation of his rights.

Additionally, as noted above, Plaintiff may be attempting to name the Bakersfield Police Department as a named Defendant. A local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Rather, a local government unit may only be held liable if it inflicts the injury complained of through a policy or custom. Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010). Generally, to establish municipal liability, the plaintiff must show that a constitutional right was violated, the municipality had a policy, that policy was deliberately indifferent to plaintiff's constitutional rights, and the policy was "the moving force" behind the constitutional violation. Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 400 (1997); Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002). "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' " Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).

A failure to train may establish liability where such omission of training amounts to deliberate indifference to a constitutional right. Clouthier v. Cty. of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010), overruled on other grounds by Castro, 833 F.3d 1060. This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 1249 (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989). "For example, if police activities in arresting fleeing felons 'so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers,' then the city's failure to train may constitute 'deliberate indifference.' " Id. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable

city 'policy.' " City of Canton, 489 U.S. at 379. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011) (citation omitted).

A plaintiff seeking to impose liability upon a municipality is required to identify the policy or custom that caused the constitutional injury. Bd. of Cty. Comm'rs of Bryan Cty., Okl., 520 U.S. at 403. If Plaintiff is attempting to bring claims against the police department, Plaintiff has failed to state a plausible claim based on a custom or policy or failure to train.

## IV.

## CONCLUSION AND ORDER

Plaintiff has failed to state a cognizable claim for a violation of his federal rights in this action. Plaintiff shall be granted leave to file an amended complaint to cure the deficiencies identified in this order. See Lopez, 203 F.3d at 1127.

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Further, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

///

///

///

///

///

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Clerk's office shall send Plaintiff a complaint form (non-prisoner);

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint;

3. Plaintiff's amended complaint shall not exceed twenty-five (25) pages in length and must be double spaced using font similar to the instant order; and

4. <u>If Plaintiff fails to file a first amended complaint in compliance with this order, the Court will recommend to the district judge that this action be dismissed, with prejudice, for failure to obey a court order, failure to prosecute, and for failure to state a claim</u>.

IT IS SO ORDERED.

Dated: __**March 15, 2022**__      _____
                                   UNITED STATES MAGISTRATE JUDGE