# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCTAVIO JAMAL HENDERSON, | Case No. 21-cv-01771-DAD-BAK |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING ACTION FOR FAILURE TO STATE A CLAIM |
| v. | |
| KEITH SCHLECCT, et al., | (ECF No. 13) |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

**I.**

**INTRODUCTION**

Octavio Jamal Henderson ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. The matter was referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On March 16, 2022, the Court screened Plaintiff's first amended complaint and granted Plaintiff thirty days to file a second amended complaint (ECF No. 12.) Currently before the Court is Plaintiff's second amended complaint, filed on April 8, 2022. (ECF No. 13.) For the reasons discussed herein, it is recommended that Plaintiff's complaint be dismissed for failure to state a cognizable claim.

///

///

## II.

## SCREENING REQUIREMENT

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim).  The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678.  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting

Twombly, 550 U.S. at 557).  Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.

## III.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff names the following individuals as Defendants: (1) Eby Bailey ("Bailey"), identified as a police officer with the Bakersfield Police Department; (2) Cory Blanchard ("Blanchard"), identified as a police officer with the Bakersfield Police Department; (3) Keith Schlecht ("Schlecht"), identified as a detective with the Bakersfield Police Department; and (4) Officer King, identified as a Warrant Officer with the Bakersfield Police Department.  (Second Am. Compl. ("SAC") 2-3,[1] ECF No. 13.)

Plaintiff alleges federal question jurisdiction for claims described as a violation of his right to due process, an excessive bail request, and an arrest warrant based on false information.  (Id. at 4.)  The Court shall reproduce the body of Plaintiff's current complaint:

> On June 19, 2019[,] Officer Cory Blanchard answered a call to Q St[.] when I was hit by a Honda in the parking lot of a medical facility.  Immediately upon hearing the version of events from [t]he person who hit me, he asked if they would like to press charges against me for assault.  This was done without speaking to either of the two witnesses who were in the vehicle that I was driving. Officer Eby Bailey assisted him on this call and also asked the driver of the vehicle if he wanted to press charges on me.  Neither officer had yet spoken to the witness[es] that were in the vehicle that I was driving.  One witness stayed behind as she was the owner of the vehicle and the other (Christy Raguini) went with me to the hospital in the ambulance.  When the woman who stayed behind (Cynthia Garland) was questioned, it was only after they had asked the Honda driver if he wanted to press charges against me for damaging his vehicle.  One of the police officers was then sent to the hospital to obtain a statement from me.  I do know that I was asked what happened and I did explain to him that we ended up in the same parking lot because I was trying to figure out if the driver was someone I knew or what was going on.  He proceeded

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

to leave the parking lot and hit me with his vehicle and then ran me over with his tire. I was questioned almost right after arriving at the hospital. I had hit my head on the black top when I was hit and although I answered questions at the time, I have subsequently suffered a seizure since the head injury and do not remember exactly what questions were asked or how I answered the questions. By not properly questioning my witnesses and questioning me right after a head injury, I was not afforded my due process.

Detective Keith Schlecct was assigned to investigate the events of June 19, 2019. I was able to obtain this information when I went to the police department to obtain a copy of the police report. I was given his name because the report was not ready. When asked why and why the person who hit me was not arrested, I was told that it was under investigation and most likely a civil matter. I left a message for the detective to contact me as soon as possible because I had questions and knew he should have questions. When he did finally call me, he said that he was on his days off and had not had a chance to review the case and that he would contact me as soon as he had any questions. I proceeded to ask him why the driver of the car that hit me had not been arrested and he raised his phone at me and stated that I was the one who was in danger of being arrested. I did not hear from him again. I did make several attempts to contact him and even went down to the police station on a number of occasions to ask questions about how the investigation was going. I was left waiting in the lobby for close to an hour with no contact from the detective and finally had to leave because of prior engagements. There was no further contact from Detective Schlecct. Finally, in August of 2019, we filed a formal complaint with the Internal Affairs department of the Bakersfield Police Department because we had no knowledge of what was going on with the investigation or even if one was being conducted. We still had no contact with the detective, either by phone call or writing.

In December of 2019, a bounty officer named Officer King arrived at my home with an arrest warrant in the amount of $67,000.00 for felony vandalism, misdemeanor child endangerment and a vehicle violation, reckless driving. After reviewing the arrest warrant, we realized that the social security number was incorrect. Also, I have not [] been convicted of any crime for over 20 years and have never been accused of property damage or child endangerment, or even reckless driving. Since the incident I have never received any type of summons to appear in court or any type of citation in the mail for reckless driving or any of the other 3 charges. Upon reviewing the arrest warrant, not only did we realize that Detective Schlecct requested an arrest warrant with an incorrect social security number, but he also requested the warrant in September of 2019, a full month after we filed a complaint against the Bakersfield Police department. On the day of my arrest, my two witnesses went to speak to the detective about the case and not only did he leave them waiting in the lobby for close to 20 minutes, when he did come down to speak to them, he was disrespectful and condescending and was unwilling to answer any

4

> questions or explain how he came to the conclusion he came to. The State Attorney General's office did have representatives in the lobby on that day from the department of justice who witnessed the entire interaction. Attorney Nancy Beninati and her assistant Tanya Koshi followed my witnesses outside to get their information and have been in contact with Christy Raguini since.
>
> In October 2021, we finally received the report from the department of justice. The Bakersfield Police Department was investigated for the same type of mishandling of investigations, including being biased and practicing racism while investigating crimes.[2]

(Id. at 5-7.)

## IV.

## DISCUSSION

### A.     Review of Plaintiff's Omitted Factual Allegations Between Pleadings

The Court finds it significant that Plaintiff has now omitted almost all factual details concerning the lead-up to the incident in question, that were previously provided in the first amended complaint. In the first amended complaint, Plaintiff stated in relevant part:

> On June 19, 2019 I was involved in an incident where another car was for some reason trying to run me off the road and slam on his brakes in front of me whenever I tried to go around him to avoid an accident. The passengers in the car with me, Cynthia Garland and Christy Raguini called 911 to let them know we were following him to get his license plate number because he was driving recklessly. The dispatcher, who I later found out, was a police officer said that he didn't understand why we were following him since they weren't going to do anything. We hung up and tried again to go about our business and the Honda Civic again began engaging in reckless behavior.
>
> I finally pulled over and got out of the car in a medical center parking lot. The driver of the Honda was in the same parking lot and he attempted to leave the parking lot, at which time he hit me and ran me over.

(ECF No. 11 at 4.)

///

///

---

[2] While Plaintiff mentions bias and racism in relation to mishandling of investigations discussed in the report, Plaintiff makes no specific allegations of racism or bias by the officers here.

5

In screening the first amended complaint, the Court made the following preliminary comments regarding the course of events as described therein:

> By Plaintiff's own account, the incident appears to be a case of road rage between two cars, with Plaintiff alleging that the other car was trying to run him off the road and slam on their brakes in front of him whenever "he tried to go around him to avoid an accident." It is unclear why Plaintiff repeatedly was trying to pass or go around someone driving recklessly rather than taking an alternate route or slowing down to allow the vehicle to get ahead of the area where Plaintiff's car was driving. Plaintiff then admittedly followed the vehicle in question despite what appear[s] to be either a statement from the dispatcher expressing confusion as to why Plaintiff was following the car in light of the dispatcher informing the Plaintiff that the police were not coming, or some sort of instructions from the dispatcher informing the Plaintiff there was no reason to follow the car.
>
> Plaintiff alleges he nonetheless continued to follow the car as it continued to engage in reckless behavior. Plaintiff vaguely states he pulled over in a parking lot, and the driver of the other car was in the same parking lot. Plaintiff does not describe which vehicle entered the parking lot first, however, from Plaintiff's repeated statements that he was following the car, it appears he followed the vehicle into a medical center parking lot. Plaintiff then only states that the vehicle attempted to leave the parking lot, and Plaintiff was struck by the vehicle. Plaintiff does not explain why he left his vehicle, if he was approaching the other vehicle, or if he was trying to prevent the other vehicle from leaving the parking lot by standing in front of it and blocking its exit, after apparently following the vehicle and repeatedly trying to pass it while the other car was allegedly driving recklessly and purposely slamming on its brakes.
>
> Plaintiff then generally describes dissatisfaction with the investigation process, however, admits that he does not remember what questions were asked on the night of the incident, nor how he answered. On the other hand, Plaintiff states the driver of the other vehicle told the officers that he hit Plaintiff with the vehicle because that person was scared because Plaintiff jumped on the vehicle to keep the other vehicle from leaving. It appears Plaintiff was charged with endangerment of a child and thus there may have been a child in the vehicle of the other person.

(ECF No. 12 at 5-6.)

It appears that Plaintiff, in consideration of the above comments, has now omitted large portions of the above facts. Now, Plaintiff's second amended complaint essentially begins after being struck in the parking lot: "On June 19, 2019[,] Officer Cory Blanchard answered a call to Q St[.] when I was hit by a Honda in the parking lot of a medical facility. Immediately upon

hearing the version of events from [t]he person who hit me, he asked if they would like to press charges against me for assault." (Compl. 6.)[3]

The Court need not accept contradictory allegations that omit relevant facts, as true. Haney v. Htay, No. 1: 16-CV-00310 AWI SKO (PC), 2017 WL 4699851, at *5 (E.D. Cal. Oct. 19, 2017) (in prisoner screening, finding x-ray exhibits attached to original complaint contradicted allegations in first amended complaint and new complaint omitted key pieces of information and such contradictory allegations need not be accepted as true), aff'd, 719 F. App'x 719 (9th Cir. 2018); Clayton v. Smith, No. 1:17-CV-00309 BAM (PC), 2018 WL 3218366, at *3 (E.D. Cal. June 29, 2018) (in prisoner screening, finding that Plaintiff "has omitted factual allegations from his original complaint and first amended complaint regarding treatments he received . . . [and] [a]lthough a plaintiff may make clarifications in an amended pleading, the Court is not required to ignore omissions of fact or contradictions of fact in later pleadings . . . [t]hus, the Court will consider omitted factual allegations in the previous pleadings."); Pickering v. California Dep't of Corr., No. 1:13-CV-01164 DAD BAM (PC), 2016 WL 7104167, at *4 (E.D. Cal. Dec. 5, 2016) (in prisoner screening, finding "Plaintiff may not omit relevant facts in his amended complaint in an effort to state a cognizable claim."); Jefferson v. Medley, No. 1:13-CV-00035-LJO, 2014 WL 1747590, at *3 (E.D. Cal. May 1, 2014) (in prisoner screening, finding the first amended complaint, signed under penalty of perjury, contained facts that were omitted in the second and third amended complaints).

**If Plaintiff submits objections to these findings and recommendations**, "he is to cogently explain this inconsistency." Gabarrete v. Hazel, No. 1:11-CV-00324-MJS PC, 2012 WL 1966023, at *3 (E.D. Cal. May 31, 2012) (in prisoner screening, finding "[i]t appears that Plaintiff has violated Rule 11 of the Federal Rule of Civil Procedure by submitting contradictory statements . . . Plaintiff is not allowed to proceed on his excessive force claim against Defendants and will not be allowed to do so unless he provides sufficient explanation as to the contradictions between the allegations of the Second Amended Complaint and the exhibits attached to his

---

[3] As discussed below in the section pertaining to habeas relief, it appears Plaintiff has now omitted the fact that he is currently on probation, from the current complaint. It is not clear whether the omission was in order to address the Court's warning concerning the need to exhaust habeas remedies in the previous screening order.

original Complaint in this action, and provides truthful facts detailing" the incident.); see also Lamon v. Amrheign, No. 1:12-CV-00296-AWI-GS, 2014 WL 3940286, at *6 (E.D. Cal. Aug. 12, 2014) (in prisoner screening, finding that given the discrepancy between the original complaint and first amended complaint, "it appear[ed] that Plaintiff ha[d] omitted material facts from the First Amended Complaint," and thus could not demonstrate sufficient causal connection for the First Amendment action, and admonishing the Plaintiff that such "intentional omission of material facts in a pleading constitutes a falsehood and may result in the imposition of sanctions under Rule 11.").

### B.     Federal Rule of Civil Procedure 8

Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal quotation marks omitted). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). This is because, while factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556-57; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Therefore, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted).

As currently pled, Plaintiff's complaint does not contain enough factual details to permit the Court to draw the reasonable inference that any of the Defendants are liable for a violation of Plaintiff's rights. Iqbal, 556 U.S. at 678. Plaintiff's allegations are vague and conclusory statements that his rights were violated because the police officers who responded to an incident allegedly believed the other person's story over Plaintiff's through a police investigation, and were unfriendly or unresponsive in subsequent interactions. These conclusory statements,

insufficiently supported by factual details, do not suffice to state any claim against any of the Defendants. Plaintiff does not, for example, allege destruction of evidence, or falsification of evidence or police records.

For these reasons, Plaintiff's complaint fails to comply with Rule 8's pleading standard.

**C.  Habeas Relief**

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for writ of habeas corpus, 28 U.S.C. § 2254, and a complaint under . . . 42 U.S.C. § 1983." Muhammad v. Close, 540 U.S. 749, 750 (2004) (per curiam). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." Id. (internal citation omitted). It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or the Heck bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Wilkinson, 544 U.S. at 81; Heck v. Humphrey, 512 U.S. 477, 482, 486-487 (1994); Edwards v. Balisok, 520 U.S. 641, 644 (1997).

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that in order to recover damages for alleged "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486. Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-*if* success in that action

9

would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson, 544 U.S. at 81-82.

Plaintiff's previously filed first amended complaint alleged he was on probation, apparently stemming from the charges related to the incident. (See ECF No. 11 at 4 ("I am not incarcerated; I am currently on probation and have been since 01/30/2020").) Plaintiff has now omitted the previously stated fact that he is on probation from the current second amended complaint. Plaintiff does not provide the Court with specific details concerning whether he was convicted at trial, submitted a guilty plea or otherwise, though does aver that he now has a felony on his record. (Compl. at 8.) **If Plaintiff chooses to file objections to these findings and recommendations, Plaintiff is expected to address the omission of the fact of whether he is currently on probation from the second amended complaint. Plaintiff is also expected to explain the circumstances surrounding such probation and any conviction related to the incident in question**. See Gabarrete, 2012 WL 1966023, at *3.

If Plaintiff has not had his sentence of probation declared invalid, or if Plaintiff is challenging any part of his sentence that has not been declared invalid, the proper avenue to seek relief is by way of habeas corpus petition filed pursuant to 28 U.S.C. § 2254. See Chico Scrap Metal, Inc. v. Robinson, 560 F. App'x 650 (9th Cir. 2014) ("In addition, *Heck* bars the claims because Plaintiffs were sentenced to compliance with the challenged cleanup orders as a condition of their probation in the criminal case, as specifically directed by the state court in its criminal judgment. . . . Indeed, many of Plaintiffs' disputes are the subject of state court litigation seeking to revoke their probation in the criminal case, further demonstrating the *Heck* bar."); Walton v. Hopper, No. 222CV00453JAMACPS, 2022 WL 837268, at *3 (E.D. Cal. Mar. 21, 2022) ("[A] probation condition is part of a sentence imposed by a criminal trial court. Accordingly, many courts have found that Heck bars a § 1983 challenge to a condition of probation unless and until that condition has been successfully challenged and set aside."); Larson v. Baker, No. CV 18-203-M-DLC-JCL, 2019 WL 1937145, at *2 (D. Mont. Feb. 15, 2019) ("The rule in *Heck* applies to the prosecution of a § 1983 claim that calls into question the fact or duration of parole or probation."), report and recommendation adopted, No. CV 18-203-

M-DLC-JCL, 2019 WL 1932443 (D. Mont. May 1, 2019); Crow v. Penry, 102 F.3d 1086, 1087 (10th Cir. 1996) ("It applies to proceedings that call into question the fact or duration of parole or probation.") (citing Jackson v. Vannoy, 49 F.3d 175 (5th Cir.), cert. denied, 516 U.S. 851 (1995)); cf. McFarland v. City of San Francisco, No. C00-2878 MMC, 2001 WL 793298, at *3–4 (N.D. Cal. July 9, 2001) ("Plaintiff, however, is on probation until approximately June 2003 . . . and thus is considered to be 'in custody' for purposes of both federal and state habeas relief . . . Consequently, plaintiff's § 1983 claim is not cognizable unless and until her conviction is reversed or otherwise invalidated."), rev'd sub nom. McFarland v. City & Cty. of San Francisco, 44 F. App'x 155 (9th Cir. 2002) ("We conclude that neither *Heck* nor *Harvey* are implicated in McFarland's case because her conviction was based on a guilty plea . . . Likewise in the present case, McFarland's claims are based on the manner in which the evidence was seized during the search. Her § 1983 claims are based on excessive force being used during the body cavity search, not on the underlying validity of the search. Based on Ove, we hold that the present action does not have the possibility of undermining McFarland's conviction."); Byrd v. Phoenix Police Dep't, 885 F.3d 639, 643 (9th Cir. 2018) ("Answering this question, we find that *Heck* does not bar Byrd's § 1983 claims. Because Byrd's conviction resulted from a plea agreement and Byrd alleged no facts in his complaint suggesting that the plea was not knowing and voluntary, success in the § 1983 action would not affect his conviction.").

Accordingly, to the extent Plaintiff wishes to challenge his sentence which has not been declared invalid by the state court, he must file a habeas corpus petition, and as currently pled, Plaintiff fails to state a cognizable claim.

**D.**     **Claims Relating to the Warrant, Arrest, and Bail**

The Fourth Amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV.

Warrantless searches would violate the Fourth Amendment unless the search falls within an exception to the Fourth Amendment's warrant requirement. See United States v. Ojeda, 276 F.3d 486, 488 (9th Cir. 2002) (citing Katz v. United States, 389 U.S. 347, 357 (1967)). "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was made without probable cause or other justification." Dubner v. City & Cty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007). "While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, [m]ere suspicion, common rumor, or even strong reason to suspect are not enough." Id. (internal quotations and citation omitted) (alteration in original).

Plaintiff has not provided facts to support a claim of unlawful search or unlawful arrest against any Defendant. First, Plaintiff would fail to state a claim for unlawful arrest because he specifically states he was arrested pursuant to a warrant. "The Fourth Amendment requires law enforcement officers to have probable cause to make an arrest if they do not have an arrest warrant." Braden v. Los Angeles Police Dep't, No. CV 16-7633 JVS(JC), 2017 WL 78467, at *3 (C.D. Cal. Jan. 9, 2017) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)); see also Blankenhorn v. City of Orange, 485 F.3d 463, 476 (9th Cir. 2007) (Stating it was "clearly established long ago that an officer may not conduct a warrantless arrest absent probable cause.").

While Plaintiff did not directly name a judge in the complaint, to the extent Plaintiff alleges the warrant was not based on probable cause, or was improperly issued because of an incorrect social security number,[4] Plaintiff is advised that judges are immune from liability under § 1983 when they are functioning in their official capacities under proper jurisdiction. See Imbler v. Pactman, 424 U.S. 409, 427 (1976); see also Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 922 (9th Cir.2004) ("Absolute immunity is generally accorded to judges and

---

[4] While Plaintiff claims the social security number as provided by Detective Schlecct was incorrect, Plaintiff does not claim that he was not meant or understood to be the proper subject or target of the warrant for the alleged crime, despite his claims that the investigation was improper or biased.

12

prosecutors functioning in their official capacities"); Ashelman v. Pope, 793 F.2d 1072, 1075-77 (9th Cir.1986) (noting that judges are generally immune from § 1983 claims except when acting in "clear absence of all jurisdiction . . . or performs an act that is not 'judicial' in nature," and prosecutors are generally immune unless acting without "authority") (internal citations omitted); Walters v. Mason, No. 215CV0822KJMCMKP, 2017 WL 6344319, at *2 (E.D. Cal. Dec. 12, 2017) (same); Forte v. Merced Cty., No. 1:15-CV-0147 KJM-BAM, 2016 WL 159217, at *12–13 (E.D. Cal. Jan. 13, 2016) ("prosecutorial immunity protects eligible government officials when they are acting pursuant to their official role as advocate for the state"), report and recommendation adopted, No. 1:15-CV-0147-KJM-BAM, 2016 WL 739798 (E.D. Cal. Feb. 25, 2016); Torres v. Saba, No. 16-CV-06607-SI, 2017 WL 86020, at *3–4 (N.D. Cal. Jan. 10, 2017). Where a prosecutor acts within his authority " 'in initiating a prosecution and in presenting the state's case,' absolute immunity applies." Ashelman, 793 F.2d at 1076 (quoting Imbler, 424 U.S. at 431). This immunity extends to actions during both the pre-trial and posttrial phases of a case. See Demery v. Kupperman, 735 F.2d 1139, 1144 (9th Cir. 1984).

Individuals have a constitutional due process right "not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc). To establish such a due process violation, a plaintiff must, at a minimum, allege either: (1) that government officials continued their investigation "despite the fact that they knew or should have known that [Plaintiff] was innocent;" or (2) "used investigative techniques that were so coercive and abusive that [they] knew or should have known those techniques would yield false information." Cunningham v. Perez, 345 F.3d 802, 811 (9th Cir. 2003) (quoting Devereaux, 263 F.3d at 1076).

Other than generally stating that police officers believed another witness over Plaintiff when investigating an incident, Plaintiff fails to indicate in any specific detail how any officer mishandled any witness, or any specific evidence in a manner that demonstrates intentional falsification of any record or evidence.[5] Plaintiff's bare conclusory allegations are not sufficient

---

[5] While Plaintiff claims the social security number as provided by Detective Schlecct was incorrect, Plaintiff does not claim that he was not meant or understood to be the proper subject or target of the warrant for the alleged crime, despite his claims that the investigation was improper.

13

to establish a claim, and do not satisfy the requirements of Federal Rule of Civil Procedure 8 as the Court found above.

The Eighth Amendment's "Excessive Bail Clause prevents the imposition of bail conditions that are excessive in light of valid interests the state seeks to protect by offering bail." Galen v. Cnty. of Los Angeles, 477 F.3d 652, 660 (9th Cir. 2007) (citing United States v. Salerno, 481 U.S. 739, 754 (1987)). Both the Supreme Court and the Ninth Circuit have assumed, but never decided, that the Clause is incorporated against the states. Id. at 659 ("Neither the Supreme Court nor we have held that the Clause is incorporated against the States. . . . We follow the Supreme Court in "assum[ing]" without deciding that the Clause is incorporated against the States."). Bail is considered excessive if set at a figure higher than an amount reasonably calculated to achieve the government's valid interests. Id. at 660 (citing Salerno, 481 U.S. at 754; Stack v. Boyle, 342 U.S. 1, 3 (1951)). To prevail on a claim under § 1983, a plaintiff must show that the putative governmental interest is invalid or that "bail was excessive in light of the purpose for which it was set." Id. at 661. Whether the amount is beyond the plaintiff's means is irrelevant. Id. at 662. In addition, the plaintiff must demonstrate that the defendants were the "actual and proximate cause of his bail enhancement." Id. at 663.

Here, there is no indication that the named Defendants had any role in an enhancement of any bail amount, nor how they would. See Williams v. Clark, No. 214CV00414APGPAL, 2015 WL 6005141, at *6 (D. Nev. Oct. 14, 2015) ("Plaintiff failed to state a claim because: (1) the LVMPD Officer did not set his bail; (2) Plaintiff has not alleged that his bail was enhanced for an improper purpose or that it was excessive in light of the reason it was set; and (3) Plaintiff provided no information about the criminal charges filed against him, his criminal history, if any, or any of the other relevant factors that were considered in setting his bail."). Further, while Plaintiff has not named a judge or judicial officer, even if he had, they are generally immune from such suits, as it "is generally well established that 'granting bail and fixing its amount are judicial or quasi-judicial functions.' " Hill v. Ponner, No. 118CV01471DADSKO, 2019 WL 142280, at *3 (E.D. Cal. Jan. 9, 2019) (quoting Valley Bail Bonds v. Budeski, No. CV–14–24–BLG–SPW–CSO, 2014 WL 3732632, at *5 (D. Mont. July 25, 2014); In re Application of

1  Floyd, 413 F.Supp. 574, 575 (D. Nev. 1976)) (citing Pattillo v. White, 890 F.2d 420 at *1 (9th
2  Cir. 1989) (unpub.) (affirming dismissal of § 1983 claims against judge for decisions made
3  during bail proceedings on grounds of absolute judicial immunity)).

4       Accordingly Plaintiff has not stated a claim for a violation of the Fourth or Eighth
5  Amendments.

6       **E.**     **Section 1983, Supervisory Liability, and Municipal Liability**

7       Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or
8  other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d
9  1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006);
10 Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim under section 1983, a
11 plaintiff is required to show that (1) each defendant acted under color of state law and (2) each
12 defendant deprived her of rights secured by the Constitution or federal law. Long, 442 F.3d at
13 1185 (9th Cir. 2006). There is no *respondeat superior* liability under section 1983, and
14 therefore, each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677.
15 To state a claim, Plaintiff must demonstrate that each defendant personally participated in the
16 deprivation of his rights. Jones, 297 F.3d at 934.

17      In other words, to the extent Plaintiff is attempting to make a claim against an officer that
18 was not personally involved but was only acting as a supervisor over an officer, Plaintiff cannot
19 state a claim unless they were personally and directly involved in the violation of his rights.

20      Plaintiff previously appeared to attempt to name the Bakersfield Police Department as a
21 Defendant, however, does not appear to be doing so in the most recently filed complaint. A local
22 government unit may not be held responsible for the acts of its employees under a *respondeat*
23 *superior* theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978).
24 Rather, a local government unit may only be held liable if it inflicts the injury complained of
25 through a policy or custom. Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir.
26 2010). Generally, to establish municipal liability, the plaintiff must show that a constitutional
27 right was violated, the municipality had a policy, that policy was deliberately indifferent to
28 plaintiff's constitutional rights, and the policy was "the moving force" behind the constitutional

violation. Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 400 (1997); Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002). "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' " Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).

A failure to train may establish liability where such omission of training amounts to deliberate indifference to a constitutional right. Clouthier v. Cty. of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010), overruled on other grounds by Castro, 833 F.3d 1060. This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 1249 (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989). "For example, if police activities in arresting fleeing felons 'so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers,' then the city's failure to train may constitute 'deliberate indifference.' " Id. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.' " City of Canton, 489 U.S. at 379. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011) (citation omitted).

A plaintiff seeking to impose liability upon a municipality is required to identify the policy or custom that caused the constitutional injury. Bd. of Cty. Comm'rs of Bryan Cty., Okl., 520 U.S. at 403. If Plaintiff is attempting to bring claims against the police department, Plaintiff has failed to state a plausible claim based on a custom or policy or failure to train.[6]

///

---

[6] Again, while Plaintiff mentions bias and racism in relation to mishandling of investigations discussed in the report he received in October of 2021 (ECF No. 13 at 7), Plaintiff makes no specific allegations of racism or bias by the officers here, nor connect the investigation here to a custom, policy, or failure to train.

## V.

## CONCLUSION AND RECOMMENDATION

Plaintiff has failed to state a cognizable claim for a violation of his federal rights in this action.

Based on the foregoing, it is HEREBY RECOMMENDED that Plaintiff's second amended complaint filed April 8, 2022 (ECF No. 13), be DISMISSED for failure to state a cognizable claim.[7]

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 15, 2022**

UNITED STATES MAGISTRATE JUDGE

---

[7] A dismissal pursuant to a Heck Bar must be without prejudice. See Chico Scrap Metal, Inc. v. Robinson, 560 F. App'x 650, 652 (9th Cir. 2014) ("The district court erred, though, in dismissing the action with prejudice. We held in *Trimble v. City of Santa Rosa,* 49 F.3d 583, 585 (9th Cir.1995) (per curiam), that *Heck*-barred § 1983 claims must be dismissed without prejudice so that the plaintiff may 'reassert his claims if he ever succeeds in invalidating his conviction.' "); Matthews v. Craven, 485 F. App'x 893, 894 (9th Cir. 2012) (same).